UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

RENATO JOSE PINTO,

        Plaintiff,

v.                                                                        CASE NO. 6:25-cv-303-SJH

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

_____/

### MEMORANDUM ORDER[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his applications under the Social Security Act ("Act") for Disability Insurance Benefits ("DIB") and for Supplemental Security Income ("SSI"). In a decision dated November 15, 2024, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability from April 15, 2021, the alleged disability onset date, through the date of decision. Tr. at 15-38. For the reasons herein, the Commissioner's decision is due to be **affirmed**.

I.    **Issue on Appeal**

Plaintiff raises a single issue on appeal, arguing "[t]he ALJ's RFC determination was not supported by substantial evidence due to [her] failure to properly evaluate the medical opinion of Carl Austin, LMHC." Doc. 18 at 7 (emphasis removed).

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge.

## II.    Standard of Review

Plaintiff appeals the denial of his applications for DIB under Title II of the Act, 42 U.S.C. § 401 *et seq.*, and for SSI under Title XVI of the Act, 42 U.S.C. § 1381 *et seq.*[2] The terms of judicial review for each are set by 42 U.S.C. § 405(g). *See* 42 U.S.C. § 1383(c)(3) (incorporating § 405(g)). Under § 405(g), judicial review "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Ohneck v. Comm'r, Soc. Sec. Admin.*, No. 22-13984, 2023 WL 8946613, at *2 (11th Cir. Dec. 28, 2023).[3]

The agency's factual findings are "conclusive" if "substantial evidence" supports them. *Biestek v. Berryhill*, 587 U.S. 97, 99 (2019). Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* at 103 (citation omitted). Though requiring "'more than a mere scintilla'" of evidence, the threshold for this standard "is not high[,]" *id.*, and does not require a preponderance of the evidence, *Flowers v. Comm'r, Soc. Sec. Admin.*, 97 F.4th 1300, 1309 (11th Cir. 2024); *see also Parks ex rel. D.P. v. Comm'r, Soc. Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015). So long as "the ALJ's decision clears the low evidentiary bar[,]" a reviewing court must affirm even if it

---

[2] The regulations under Title II are located at 20 CFR pt. 404. The regulations under Title XVI are located at 20 CFR pt. 416.

[3] Unpublished opinions are not binding precedent; however, they may be cited when persuasive on a particular point. *See United States v. Futrell*, 209 F.3d 1286, 1289-90 (11th Cir. 2000); 11th Cir. R. 36-2.

"would have reached a different result and even if a preponderance of the evidence weighs against the Commissioner's decision[.]" *Flowers*, 97 F.4th at 1309. A reviewing court may not "'decide the facts anew, make credibility determinations, or re-weigh evidence.'" *Id.* at 1306 (citation omitted); *see also Rodriguez v. Soc. Sec. Admin.*, 118 F.4th 1302, 1315-16 (11th Cir. 2024); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).

The same deference does not attach to conclusions of law. *See Flowers*, 97 F.4th at 1304, 1306; *Martin*, 894 F.2d at 1529. A "failure to apply the correct legal standards or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529; *see also Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007).

## III.    The ALJ's Decision

Under the Act's general statutory definition, a person is considered disabled if unable to engage in substantial gainful activity by reason of a medically determinable impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of at least 12 months. *See* 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 382c(a)(3)(A).[4] In making a disability determination, the Social Security Administration generally uses a five-step sequential process. 20 C.F.R. §

---

[4] Because the definitions of disability under Title II and Title XVI are the same, cases under one statute are generally persuasive as to the other. *See Jones v. Astrue*, No. 3:10-cv-914-J-JBT, 2011 WL 13173806, at *2 n.2 (M.D. Fla. Oct. 17, 2011).

404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).[5] The ALJ applied this five-step sequential process. Tr. at 19-38.[6] At step one, the ALJ found that Plaintiff had engaged in substantial gainful activity during the following periods: the second quarter of 2022, the fourth quarter of 2022, and the fourth quarter of 2023. *Id.* at 20. The ALJ found at step two that Plaintiff "has the following severe impairments: left foot disorder (mild), degenerative disc disease of the lumbar spine, obstructive sleep apnea, gastroesophageal reflux disease (GERD), hypothyroidism, obesity, major depressive disorder, and posttraumatic stress disorder (PTSD) (20 CFR 404.1520(c) and 416.920(c))." *Id.* at 21 (emphasis removed). At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or equals a listed impairment. *Id.* at 22. The ALJ found that Plaintiff has the following residual functional capacity ("RFC"):

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). He can lift/carry/push/pull 20 pounds occasionally and 10 pounds

---

[5] At step one, the person must show the person is not engaged in substantial gainful activity. At step two, the person must show the person has a severe impairment or combination of impairments. At step three, the person may show the impairment or combination of impairments meets or equals the severity of one of the listings in the appendix of the applicable regulations. Absent such a showing, at step four, the person must show the person cannot perform the person's past relevant work given the person's residual functional capacity ("RFC"). Step five, at which the burden temporarily shifts to the Commissioner, asks whether there are a significant number of jobs in the national economy the person can perform given the person's RFC, age, education, and work experience. If it is determined at any step the person is or is not disabled, the analysis ends without proceeding further. *See* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4); *Flowers*, 97 F.4th at 1308; *Jacob v. Comm'r of Soc. Sec.*, No. 8:22-cv-2435-CEH-TGW, 2024 WL 3548902, at *3-4 (M.D. Fla. July 26, 2024).

[6] The ALJ found Plaintiff meets the insured status requirements through December 31, 2028. *Id.* at 21. Title II of the Act "'provides old-age, survivor, and disability benefits to insured individuals irrespective of financial need.'" *Smith v. Berryhill*, 587 U.S. 471, 475 (2019) (citation omitted). Title XVI of the Act "provides supplemental security income benefits 'to financially needy individuals who are aged, blind, or disabled regardless of their insured status.'" *Id.* (citation omitted).

> frequently. He can stand and/or walk 4 hours and sit 6 hours in an 8-hour workday with normal breaks. He can occasionally climb ladders, ramps, or stairs; never climb ropes or scaffolds; occasionally stoop, kneel, crouch, or crawl; occasionally balance (on uneven terrain); he can have occasional exposure to temperatures under 40 degrees and over 90 degrees, no concentrated exposure to vibration or pulmonary irritants, no exposure to unprotected heights or dangerous moving machinery. He can perform simple work tasks with occasional interaction with the public and supervisors. He can tolerate occasional changes in work setting.

*Id.* at 24 (emphasis removed). The ALJ found at step four that Plaintiff is unable to perform any past relevant work, but found at step five that jobs exist in significant numbers in the national economy that he can perform, such that he has not been under a disability from the alleged date of onset though the date of decision. *Id.* at 36-38.

## IV.    Analysis

Plaintiff raises a single issue on appeal, arguing "[t]he ALJ's RFC determination was not supported by substantial evidence due to [her] failure to properly evaluate the medical opinion of Carl Austin, LMHC." Doc. 18 at 7 (emphasis removed). In determining the persuasiveness of a medical source's medical opinions, supportability and consistency are the two most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ *must* explain the consideration of these two factors and *may*, but need not, explain consideration of the others. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). As to supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20

C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). As to consistency, "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

The ALJ explained, *inter alia* and specifically pertaining to LMHC Austin, as follows:

> Carl Austin, a licensed mental health counselor, completed a medical source statement on August 5, 2024. (Exhibit 25F) Mr. Austin noted that the claimant has bipolar disorder and PTSD with signs and symptoms including but not limited to decreased energy, generalized persistent anxiety, mood disturbance, somatization, difficulty concentrating, marked distress due to recurrent and intrusive recollections of a traumatic experience. Prognosis was poor. Mr. Austin opined the claimant is unable to meet competitive standards with respect to making simple work-related decisions, completing a normal workday and workweek without interruptions from psychologically based symptoms, and performing at a consistent pace without an unreasonable number and length of rest periods, responding appropriately to changes in a routine work setting, and dealing with normal work stress. He is seriously limited but not precluded from maintaining regular attendance and be punctual within customary, usually strict tolerances; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being unduly distracted; accepting instructions and responding appropriately to criticism from supervisors. He has limited but satisfactory ability to remember work-like procedures, maintain attention for two-hour segments, ask simple questions or request assistance, get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, be aware of normal hazards and take appropriate precautions, interact appropriately with the general public, maintain socially appropriate behavior, adhere to basic standards of neatness and cleanliness, travel in unfamiliar place, and use public transportation. He has repeated episodes of deterioration or decompensation in work or work-like setting which cause the patient to withdraw from the situation or experience exacerbation of signs and

6

symptoms. He has deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner (in a work setting or elsewhere). He has repeated episodes of deterioration or decompensation in work or work-like settings. He would be off-task 20% of an 8-hour workday. He would be absent from work for about 2 days per month die to his impairments and treatment of impairments. His impairments existed and persisted since at least April 15, 2021 (Exhibit 25F/1-5) In support, Mr. Austin noted that the claimant became his client on October 20, 2020 and that he had over 30 therapy sessions with the claimant (in approximately 4 years). The undersigned finds Mr. Austin's opinions unpersuasive, as it is not well supported by Mr. Austin's course of treatment of the claimant or his treatment notes, which contain minimal objective findings and consistent of summaries of the claimant's subjectively reports symptoms and limitations (Exhibit 4F, 26F/7-8). The extent of limitations is also inconsistent with the essentially benign objective finding of the VA Medical Center, which shows clear and fluent speech, good insight and judgment, calm and cooperative behavior, normal thought content, normal mood/affect, intact memory, logical and coherent thought process, and alert, attentive, and oriented). (Exhibits 2F/297-301, 8F/28, 9F, 10F, 13F, 14F, 17F, 26F).

Tr. at 35-36.[7] Plaintiff argues that the ALJ erred with respect to the supportability and consistency analysis as to LMHC Austin. Doc. at 9-13. The undersigned addresses each argument in turn.

With respect to supportability, Plaintiff argues that a psychological opinion necessarily relies on subjective reporting such that "LMHC Austin's reliance on

---

[7] With respect to the last sentence quoted above, the ALJ noted earlier in a similar discussion citing the same exhibits that that "the claimant's records consistently show normal mental status examinations" including in 2021, 2022, 2023, and 2024. *Id.* at 30. To that end, "'it is proper to read the ALJ's decision as a whole, and ... it would be a needless formality to have the ALJ repeat substantially similar factual analyses[.]'" *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1275 (11th Cir. 2024) (citations omitted); *see also Adams v. Soc. Sec. Admin.*, Comm'r, No. 23-11233, 2024 WL 2846726, at *3 (11th Cir. June 5, 2024); *Martin v. Comm'r of Soc. Sec.*, No. 8:22-cv-1435-JSS, 2023 WL 3644419, at *7 (M.D. Fla. May 25, 2023); *Jesus v. Comm'r of Soc. Sec.*, No. 6:20-cv-1930-EJK, 2022 WL 2293887, at *4 (M.D. Fla. Feb. 9, 2022).

subjective reporting for an inherently subjective impairment, without more, does little to show the opinion was unsupported." *Id.* at 10. The undersigned disagrees. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The ALJ was permitted in her supportability analysis to cite the lack of objective findings and course of treatment and reliance on summaries of subjective reports. *See Nardelli v. Comm'r of Soc. Sec.*, No. 23-11581, 2024 WL 565383, at *5 (11th Cir. Feb. 13, 2024) ("[B]ut that opinion [by a psychologist] was apparently based entirely on [the claimant's] subjective reports. So the ALJ was entitled to consider that statement in context and weigh it accordingly."); *Russo v. Comm'r of Soc. Sec.*, No. 6:24-cv-01621-JSS-UAM, 2025 WL 1456879, at *3 (M.D. Fla. May 5, 2025) ("Further, the ALJ considered the supportability of [the doctor's] opinion. The ALJ pointed out that [the doctor] relied on Plaintiff's self-reports rather than objective observation. Plaintiff's mental status, the objective portion of [the doctor's] assessment, was largely normal or benign, and Plaintiff was noted to be friendly and cooperative, maintaining appropriate eye contact throughout the interview.") (internal citations omitted), *report and recommendation adopted*, 2025 WL 1456589 (M.D. Fla. May 21, 2025); *Rollinger v. Comm'r of Soc. Sec.*, No. 6:23-cv-868-DCI, 2024 WL 2795810, at *5 (M.D. Fla. May 31, 2024) ("The ALJ permissibly discounted [the claimant's psychologist's] opinion based on the ALJ's

determination that [the psychologist's] opinion was based primarily on Claimant's subjective complaints, and not [the psychologist's] own objective mental status examinations."); *see also Ervin v. Comm'r of Soc. Sec.*, No. 22-cv-10892, 2023 WL 5803698, at *4 (E.D. Mich. Sept. 7, 2023).

Plaintiff's premise—that the ALJ's analysis "does little to show the opinion was unsupported"—is telling. Doc. 18 at 10. It is not for the Court to reweigh the evidence or decide how much or little evidence moves the needle. *See Rodriguez*, 118 F.4th at 1315-16. The ALJ conducted a proper supportability analysis as required. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).[8]

---

[8] To the extent Plaintiff through his argument attempts to implicitly revert to the old treating-physician rule, such is further unpersuasive. *See, e.g.* Doc. 18 at 10. Though ALJs were previously "instructed to defer to the medical opinions of a social security claimant's treating physicians" and to give such opinions more weight "unless there was good cause not to do so[,]" that rule was eliminated in 2017. *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 896 (11th Cir. 2022). For claims, like this one, filed on or after March 27, 2017, "an administrative law judge must 'not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources.'" *Id.* at 897 (quotation omitted); *see also Spurgeon v. Soc. Sec. Admin., Comm'r*, No. 22-10999, 2024 WL 1395258, at *1, 4-5 (11th Cir. Apr. 2, 2024); *Thomas v. Comm'r of Soc. Sec.*, No. 3:23-CV-1243-SJH, 2024 WL 4764465, at *3-4 & n.3 (M.D. Fla. Nov. 13, 2024); *Sunderman v. O'Malley*, No. 8:23-cv-01367-AAS, 2024 WL 3811933, at *5 (M.D. Fla. Aug. 14, 2024). To that end, Plaintiff relies heavily on authority decided under the prior treating-physician rule. *See* Doc. 18 at 10 (citing *Griffith v. Comm'r of Soc. Sec.*, No. 23-13903, 2024 WL 3024922, at *6 (11th Cir. June 17, 2024); *Ortiz v. Comm'r of Soc. Sec.*, No. 8:20-cv-0864-T-MAP, 2021 WL 4452793, at *7 (M.D. Fla. Sept. 29, 2021); *McVey v. Saul*, No. 8:18-cv-2304-T-SPF, 2020 WL 2570073, at *5 (M.D. Fla. May 21, 2020); and *Roundtree v. Saul*, No. 8:18-cv-1524-T-SPF, 2019 WL 4668174, at *4 (M.D. Fla. Sept. 25, 2019)). Not only was each of these cases decided under that prior rule, the analysis to which Plaintiff cites was tied to the treating-physician rule and whether there was "good cause" in a particular case to not defer to a treating physician. *See Griffith,* 2024 WL 3024922, at *5-6; *Ortiz,* 2021 WL 4452793, at *3-8 & n.3; *McVey,* 2020 WL 2570073, at **3 & n.4, 5-6; *Roundtree,* 2019 WL 4668174, at *3-4. But no such rule or requirement applies here, rendering Plaintiff's reliance misplaced. *See, e.g., Medina v. Kijakazi*, No. 21-cv-62281, 2022 WL 6572349 (S.D. Fla. Aug. 23, 2022) ("[A]brogation [of the treating-physician rule] is significant. … Various statements Plaintiff points to in [cases] were … part and parcel of the recognition that a greater explanation than that provided in those cases was needed to supply good cause to discount or reject a treating physician's opinion where the treating-physician rule required extra deference. However, the

Turning to consistency, Plaintiff argues that "the majority of evidence cited" by the ALJ as inconsistent "was documentation of examination for physical impairments" and claims "[t]he ALJ failed to explain why examinations for issues wholly unrelated to Plaintiff's mental health concerns should serve as evidence of inconsistency with the opinion." Doc. 18 at 11. But contrary to Plaintiff's suggestion, the ALJ did not cite "to a collection of examinations, virtually all of which were unrelated to Plaintiff's psychological treatment, and declare[] that because many physical examinations did not document psychological deficits, LMHC Austin's opinion was inconsistent with the record." *Id.* The ALJ instead cited affirmative documentation of benign objective findings and observations. Tr. at 36; *see also id.* at 30. For example, the ALJ cited evidence including: (i) consistently normal mental status evaluations, including in 2021, 2022, 2023, and 2024, (ii) documentation of similar objective support, including Plaintiff's exhibiting clear and fluent speech, being alert and oriented, lacking suicidal ideation, *etc.*; and (iii) documentation of Plaintiff's

---

treating-physician rule and good cause requirement that applied in [those cases] does not apply here. And there is a significant difference between, on the one hand, finding that an ALJ's rationale is insufficient to discount an opinion that would otherwise be entitled to controlling weight and, on the other hand, finding that an ALJ's rationale is inadequate (applying a substantial evidence standard) to show that an opinion entitled to no special deference is not supported. Thus, the ALJ's reasons for finding that the supportability factor undermined the persuasiveness of [an] opinion are more than reasonably adequate given that [such] opinion is not entitled to any special deference (unlike the opinions of the treating physicians in cases [under the old rule]."), *report and recommendation adopted*, 2022 WL 4462056 (S.D. Fla. Sept. 26, 2022); *see also Vergara v. Comm'r of Soc. Sec.*, No. 22-11671, 2023 WL 5814433, at *3 n.* (11th Cir. Sept. 8, 2023) (affirming denial of benefits as supported by substantial evidence and explaining claimant's reliance on "decisions [that] involved applications for disability benefits filed before 27 March 2017" was "misplaced" as those decisions "considered opinion evidence under the treating-physician old rule: a rule inapplicable to [this] case"); *Spires v. O'Malley*, No. 8:22-cv-2683-AEP, 2024 WL 912429, at *6 (M.D. Fla. Mar. 4, 2024).

PTSD being stable. *See, e.g., id.* at 30, 36, 1060, 1284, 1348, 1354-55, 1462-63, 1542, 1544, 1590, 1610, 1721, 1755, 1761, 1842, 1844-45, 1904, 1962, 1989, 3000, 3102-03.

To be sure, as Plaintiff argues, these findings and notes were mostly in connection with visits for physical impairments. But in evaluating consistency, the ALJ considers "evidence from other medical sources and nonmedical sources …." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *see also Hardy v. Comm'r of Soc. Sec.*, No. 6:24-CV-587-NPM, 2025 WL 925849, at *4 (M.D. Fla. Mar. 27, 2025) ("Consistency requires 'the evidence from other medical sources and nonmedical sources' to be consistent with the medical opinion presented."). The mere fact that the evidence the ALJ considered to be inconsistent came from different types of doctors and visits, including Plaintiff's primary care physician, does not bar it from consideration. *See, e.g.*, *Heath J. v. Comm'r of Soc. Sec. Admin.*, No. 6:22-cv-00577-AN, 2023 WL 5499983, at *8 (D. Or. Aug. 24, 2023) ("Plaintiff is correct that the ALJ cited to mental status exam notes entered during the course of treatment for his physical conditions. However, the occasion as to why those mental status exam notes were taken is immaterial to the ALJ's determination of plaintiff's mental health status. The ALJ is instructed and encouraged to view the entirety of the record.") (internal citations omitted); *Gogel v. Comm'r of Soc. Sec.*, No. 2:20-cv-366-MRM, 2021 WL 4261218, at *9 (M.D. Fla. Sept. 20, 2021) ("Plaintiff cites no legal authority to support his contention that the ALJ cannot consider the consistency of an opinion by a mental health specialist with the objective psychiatric findings of a non-mental health specialist.");

11

*Sherri C. v. Saul*, No. 2:19-cv-00393-JTR, 2020 WL 7059579, at *3 (E.D. Wash. Dec. 2, 2020) (rejecting plaintiff's argument "that the record documents her mental health difficulties and that the normal mental status exams cited by the ALJ were predominantly from physical exams" and explaining that "[t]he consistency of an opinion with the record as a whole is a relevant factor for an ALJ to consider" and "[t]he ALJ discussed the record and noted that while mental status exams were not all entirely normal, they largely showed Plaintiff to be fully oriented, with appropriate mood and affect, normal behavior, and normal insight and judgment"). [9]

## V.    Conclusion

As Plaintiff's briefs articulate, the ALJ could have weighed the evidence differently to reach a different conclusion as to the opinion of LMHC Austin. That is of no moment. It matters not if a reviewing court "would have reached a different result" or "even if a preponderance of the evidence weighs against the Commissioner's decision[.]" *See Flowers*, 97 F.4th at 1309. Nor may a reviewing court "'decide the facts anew, make credibility determinations, or re-weigh evidence.'" *Id.* at 1306 (citation omitted); *see also Rodriguez*, 118 F.4th at 1315-16; *Martin*, 894 F.2d at 1529. Because the ALJ's decision clears "the low evidentiary bar" of substantial evidence, it is due to

---

[9] Indeed, in appropriate circumstances, inconsistency need not be predicated on evidence from another medical source (let alone one of a particular specialty). Because a consistency analysis requires comparison to medical and nonmedical sources, an opinion's inconsistency with either is a valid consideration. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2); *cf. Spann v. Comm'r of Soc. Sec.*, No. 8:24-cv-961-JSM-SPF, 2025 WL 2109209, at *8 (M.D. Fla. July 10, 2025), *report and recommendation adopted*, 2025 WL 2106656 (M.D. Fla. July 28, 2025). For example, an ALJ can properly articulate a consistency analysis by referencing a claimant's inconsistent activities of daily living. *See, e.g.*, *Melendez v. Comm'r of Soc. Sec.*, No. 20-CV-6695 (BCM), 2022 WL 912928, at *7 (S.D.N.Y. Mar. 28, 2022).

be affirmed. *See Flowers*, 97 F.4th at 1309; *see also Garvin*, 2024 WL 4647944, at \*2-3; *Cruz v. Comm'n of Soc. Sec.*, No. 2:22-cv-603-KCD, 2023 WL 7487422, at \*4 (M.D. Fla. Nov. 13, 2023); *Martin v. Comm'r of Soc. Sec.*, No. 8:22-cv-1435-JSS, 2023 WL 3644419, at \*\*2, 9 (M.D. Fla. May 25, 2023).

Accordingly, it is **ordered**:

1.    The Commissioner's decision is **affirmed**.

2.    The Clerk of Court is **directed** to enter judgment accordingly, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, on November 21, 2025.

Samuel J. Horovitz
United States Magistrate Judge

Copies to:

Counsel of Record